******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

D'AURIA, J., dissenting. The majority in this appeal reverses the judgment of conviction because the trial court gave the "no adverse inference instruction" required by General Statutes § 54-84 (b) in its preliminary instructions, after the jury was empaneled but before the evidentiary portion of the trial began, and did not repeat it in its final instructions. The majority does not claim that the federal constitution, the state constitution, or the unambiguous language of § 54-84 (b) mandates that the court give the instruction in its final charge. Rather, the majority reverses the conviction of the defendant, Luiz Roman, because, in *State* v. *Hicks*, 97 Conn. App. 266, 277, 903 A.2d 685, cert. denied, 280 Conn. 930, 909 A.2d 958 (2006), the Appellate Court construed the statute to so require, and the majority today deems that earlier interpretation of § 54-84 (b) correct.

I cannot agree with the majority that the plain error doctrine requires this result. See Practice Book § 60-5. In particular, I cannot conclude that it is so clearly "not debatable" that § 54-84 (b) mandates that a trial court provide the no adverse inference instruction in its final instructions, as opposed to during any other portion of the trial, and that a court's failure to do so constitutes patent error. In my view, *Hicks*, in which the Appellate Court considered the defendant's unpreserved § 54-84 (b) claim as a constitutional claim reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), was wrongly decided. I also do not agree that it is appropriate in this case to conclude that the trial court completely omitted the instruction and therefore place the burden on the state to prove, beyond a reasonable doubt, that this nonconstitutional instructional error did not cause the defendant harm. Rather, I would apply the usual plain error standard and conclude that there is not a sufficient reason to justify reversing the defendant's conviction, upon a finding of manifest injustice, when the instruction *had in fact been provided* to the jury.

Section 54-84 (b) requires the trial court to give the no adverse inference instruction absent a request by the

defendant to omit the instruction. The defendant does not need to request the instruction, but the statute is silent about when it must be given. Thus, although it certainly would have constituted patent error had the trial court neglected to provide the instruction to the jury at all, the court instructed the jury as the statute mandates by providing the required instruction, before the evidentiary portion of the trial began. That is more than the constitution demands. If this court concludes, as a matter of *judicial* policy, that the most appropriate and effective time for the trial court to provide this important, required instruction is in the final jury charge, after the defendant has elected not to testify and closer in time to jury deliberations, I would have no objection to that rule. I am not persuaded, however, that this rule is *legislative* policy, as the majority contends. See part II A of the majority opinion. More particularly, I cannot agree that it is so obviously legislative policy that it justifies reversing the defendant's conviction under the plain error doctrine.

Although I have no difficulty reversing a conviction when there is a reason to question the fairness of the verdict, I believe doing so in the present case dilutes the extraordinary remedy of the plain error doctrine and trivializes the instances in which this court has affirmed convictions after finding harmless what I would consider more significant instructional or even constitutional errors. I therefore respectfully dissent.

I

Section 54-84 (b) provides: "Unless the accused requests otherwise, the trial court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence." The first sentence of subsection (b) clearly and unambiguously mandates that the court instruct the jury not to draw an unfavorable inference from the accused's failure to testify. Accordingly, this court has held that, unless the defendant requests that

the trial court not so instruct the jury, the failure to so instruct an empaneled jury is plain error. See, e.g., *State* v. *Ruocco*, 322 Conn. 796, 804, 144 A.3d 354 (2016); *State* v. *Burke*, 182 Conn. 330, 331–32, 438 A.2d 93 (1980). Although the statute's text and legislative history are clear that the trial court lacks discretion to omit the charge unless the accused so requests, as the majority agrees, § 54-84 (b) does not dictate *when* the trial court must so instruct the jury.

It is true "that silence does not necessarily equate to ambiguity." (Internal quotation marks omitted.) *State* v. *Ramos*, 306 Conn. 125, 136, 49 A.3d 197 (2012). "Rather, [i]n determining whether legislative silence renders a statute ambiguous, we read the statute in context to determine whether the language is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id. "For example, silence may render a statute ambiguous when the missing subject reasonably is necessary to effectuate the provision as written." Id. In my opinion, it is at least ambiguous whether the legislature, when it mandated that the trial court "instruct the jury" not to draw an adverse inference, intended that the court do so at a specific time. Even if we assume, as the majority concludes, that the statute in fact means that the court must deliver the instruction during its final charge, the "subject" (i.e., the timing) is "missing" from the statute and would be "necessary" to effectuate the majority's interpretation. *State* v. *Ramos*, supra, 136. It is therefore appropriate, and I believe pertinent to the legislature's intent, to look at the statute's history in the context of the legal landscape at the time of its enactment. See, e.g., *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 407, 944 A.2d 925 (2008) (when statute is silent with respect to issue at hand, we consider "the legislative history and circumstances surrounding its enactment . . . the legislative policy it was designed to implement, and . . . its relationship to existing legislation and [common-law] principles governing the same general subject matter" (internal quotation marks omitted)).

In *State* v. *Branham*, 171 Conn. 12, 15–16, 368 A.2d 63 (1976), this court held that, in the absence of controlling statutory provisions, an accused is not entitled, constitutionally or statutorily, to an instruction that the jury may not draw an adverse inference from his failure to testify in his own defense.[1] One year later, in 1977, the General Assembly took note of the legislative lacunae we had identified in *Branham* and passed No. 77-360 of the 1977 Public Acts, which was codified at General Statutes (Rev. to 1979) § 54-84 (b).[2] *State* v.

[1] In reaching that conclusion, the court in *Branham* relied on *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) (comments by prosecutor or court about defendant's failure to testify violate constitution), and declined to follow *Bruno* v. *United States*, 308 U.S. 287, 293–94, 60 S. Ct. 198, 84 L. Ed. 257 (1939) (accused can request jury instruction on adverse inference), which had been based not on the federal constitution but on a federal statute. See *State* v. *Branham*, supra, 171 Conn. 15.

[2] Subsection (a) of § 54-84 which had been on the books for many years, derived from General Statutes (1887 Rev.) § 1623. Between 1867 and 1879, the statute provided that the "neglect of an accused person to testify should not be commented upon by the prosecuting attorney or the court." *State* v. *Williams*, 90 Conn. 126, 132, 96 A. 370 (1916). Therefore, before 1879, it was improper for the court or the prosecutor to comment to the jury at all on the accused's silence; see *State* v. *Heno*, 119 Conn. 29, 35, 174 A. 181 (1934); even to admonish the jury not to consider it. See General Statutes (1875 Rev.) tit. XX, c. 13, pt. 5, § 7 ("[n]or shall such neglect be alluded to, or commented upon by the prosecuting attorney, or by the court").

In 1879, the legislature repealed General Statutes (1875 Rev.) tit. XX, c. 13, pt. 5, § 7, replacing it with what became § 1623, which provided that "the neglect or refusal of an accused party to testify shall not be commented upon to the court or jury." Public Acts 1879, c. 69, § 1; see id., § 2. Until the 1977 amendment to the statute, this language was construed to prohibit only the prosecutor from commenting on the defendant's silence to either the jury or to the court but not to prohibit the court itself from commenting to the jury on the defendant's silence or from giving a charge on the matter. See *State* v. *Annunziato*, 154 Conn. 41, 43, 221 A.2d 57 (1966); *State* v. *Heno*, supra, 119 Conn. 35. Thus, even as it repealed the prohibition against any comment by the court and left in place the prohibition on comment by the prosecutor, the legislature never gave any indication of a concern about the proper timing of any comment by the court.

The original 1977 bill required that the trial court give the no unfavorable inference charge only when requested to do so by the accused, which would have met the United States Supreme Court's standard set a few

*Sinclair*, 197 Conn. 574, 585 n.13, 586, 500 A.2d 539 (1985) (recognizing that § 54-84 (b) was proposed in response to holding in *Branham*).

Only a few years after the 1977 legislation, the United States Supreme Court held that a defendant has a federal constitutional right to a no adverse inference instruction, but only if he requests it. See *Carter* v. *Kentucky*, 450 U.S. 288, 305, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981). Thus, in the five years between *Branham* and *Carter*, defendants' rights had progressed from there being no right to an adverse inference instruction to having a federal constitutional right to the instruction if requested and a statutory right to the instruction, even when not requested. Nothing in the text or legislative history of § 54-84 (b) directly addresses the timing of the mandatory instruction, however. This silence suggests to me that the legislature was concerned exclusively with ensuring that trial courts provide the no adverse inference instruction to the jury, unless the defendant "requests otherwise," and not *when*, during a trial, the court must so instruct the jury. General Statutes § 54-84 (b).

Consistent with this understanding, I know of no controlling case, and the majority cites no case at all, suggesting that, when the defendant requests the instruction, and therefore has a constitutional right to it, he has a concomitant right to have that instruction delivered during the court's final instructions. Cf. *Townsend* v. *State*, 934 N.E.2d 118, 131 (Ind. App. 2010) (trial court did not abuse its discretion in rejecting defendant's request to

years later in *Carter* v. *Kentucky*, 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981). See House Bill No. 8092, 1977 Sess. An amendment eliminated this condition and, instead, required the court to give the charge unless the accused requested otherwise. See 20 H.R. Proc., Pt. 11, 1977 Sess., pp. 4543–44, remarks of Representative Robert G. Jaekle (discussing Substitute House Bill No. 77-8092, 1977 Sess., as amended by House Amendment Schedule A and Senate Amendment Schedule A. Senator Salvatore C. DePiano, in explaining the amended bill to his colleagues on the Senate floor, stated: "[T]he amendment merely makes the [c]ourt mandatorily give a charge to the jury that they can draw no unreasonable or unfavorable inference against a defendant who has not testified in his own behalf . . . ." 20 S. Proc., Pt. 5, 1977 Sess., p. 2068.

give no adverse inference instruction in final charge to jury when substance of instruction had been covered in preliminary instructions because "whether [the jury] hears the instructions before or after the evidence is presented is of no relevance" (internal quotation marks omitted)). Thus, given the legislative silence regarding the timing of the instruction, it is not logical to conclude that a defendant who does *not* request the instruction or object to its omission, but is entitled to the instruction by statute, has a right to have the trial court deliver the unrequested instruction at a particular time.

The majority does not contend that the words "instruct the jury" in § 54-84 (b) clearly and unambiguously mandate that the trial court must do so during the court's final instructions or violate the statute. Rather, although it assiduously avoids using the word "ambiguous," the majority reasons that, when the legislature directed courts to "instruct the jury," it could only have meant that "the prescribed instruction would be included in the final instructions" based on the contemporary use of jury instructions at the time of the statute's enactment, the later evolution of the practice of providing preliminary instructions in this state's courts, and the importance of the instruction itself. Part II A of the majority opinion.

I do not disagree that the majority's interpretation of the legislature's silence as to the timing of the mandatory jury admonition is reasonable. However, it is also reasonable to conclude that the legislature was, and remains, uninterested in constraining judicial discretion to determine when it is most appropriate and effective to instruct the jury not to draw an adverse inference. I find it difficult to believe, for example, that the legislature would object to a trial court's instructing the jury immediately following a canvass of the defendant regarding his decision not to testify or after the defense rests but prior to closing arguments. By its construction of § 54-84 (b), however, the majority would have to conclude that providing the instruction at any time other than during "final" instructions patently violates the statute.

Indeed, the text of § 54-84 (b) itself does not present a binary choice between providing the instruction during preliminary or final instructions at all. Reasonable minds can disagree as to when it is most appropriate or effective for the trial court to give the instruction to the jury. In fact, the text of § 54-84 (b) contemplates that the defendant might, under some circumstances, have a tactical reason for asking the court not to give the instruction at all. See General Statutes § 54-84 (b) (court must instruct jury not to draw any unfavorable inferences from accused's failure to testify "[u]nless the accused requests otherwise"). It follows, then, that there could be a tactical reason that a defendant, even if he is not opposed to the court's giving the instruction prior to the close of the evidentiary portion of the trial, might not want it repeated, and his silence emphasized, in the court's final instructions just before the jury begins its deliberations. It is therefore no surprise that neither the text nor the history of § 54-84 (b) manifests an intent by the legislature to mandate when, during a trial, the court must give the no adverse inference instruction.

Even if I conceded, upon plenary review of the statute, that the majority's interpretation is the most reasonable, at the very least, it is far from obvious—and, in plain error parlance, certainly "debatable"—that the statute requires the trial court to admonish the jury, during final instructions as opposed to earlier in the trial, not to draw any adverse inference from the defendant's failure to testify. I do not believe that the plain error doctrine is the appropriate appellate vehicle for reviewing and correcting an unpreserved ruling that is arguably not incorrect in the first place. See *State* v. *Pierce*, 269 Conn. 442, 453, 849 A.2d 375 (2004). The statute only unambiguously provides that "the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify." General Statutes § 54-84 (b). In the present case, the trial court complied with all that the express provisions of the statute require—and more than the constitution requires—by so instructing an empaneled jury. I would not conclude that the trial court

committed a clear and obvious, patent and undebatable error by providing the instruction only during its preliminary instructions. See General Statutes § 54-84 (b); see also *State* v. *Fagan*, 280 Conn. 69, 88, 905 A.2d 1101 (2006) (compliance with express provisions of statute is not clear and obvious impropriety requiring reversal of judgment under plain error doctrine), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

## II

The majority contends that its construction of § 54-84 (b), and therefore its plain error analysis, gets a boost from the Appellate Court's construction of § 54-84 (b) in *Hicks*, in which that court concluded that a trial court must include the no adverse inference instruction in its final jury charge because the statute's "text is imbued with the interpretive gloss provided by authoritative case law, which includes *Hicks*." Part II A of the majority opinion. This court has never held, or even suggested, that § 54-84 (b) provides that the instruction must be given at a particular time, or that the failure to give it during final instructions (as opposed to during preliminary instructions or at any other time) constitutes a constitutional violation, as the court in *Hicks* did. Yet, it is enough for the majority in the present case to reverse the defendant's conviction when the Appellate Court in *Hicks* held that it was harmful *constitutional* error for the trial court to give the instruction only in its preliminary instructions.

The majority makes no legislative acquiescence argument, however, and also acknowledges that "this court has not previously had occasion to consider whether the holding in *Hicks* is correct."[3] Id. Like the majority, therefore, I undertake a plenary review of the decision in

[3]Although this court denied certification to appeal from the Appellate Court's judgment in *Hicks*, "[w]e have made it clear that a denial of a petition for certification to appeal does not signify that this court approves of or affirms the decision or judgment of the Appellate Court." *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 653, 6 A.3d 60 (2010).

*Hicks*, but, unlike the majority, I cannot conclude that the Appellate Court correctly decided *Hicks*. Regardless, *Hicks* is not binding on this court, and I cannot conclude that the existence of *Hicks* requires *this court* (as opposed to the Appellate Court) to conclude that the trial court committed patent error in the present case.

In *State* v. *Hicks*, supra, 97 Conn. App. 266, the trial court, in its preliminary instructions, instructed the jury: "The defendant has no obligation to offer any evidence or testimony or to take the [witness] stand, and if he chooses to do neither of those things nor any or all of those, you cannot draw any unfavorable inference against the defendant." (Internal quotation marks omitted.) Id., 274. The defendant did not testify at his trial. Id., 268. In its final charge to the jury, the court stated: "[W]hen you're deciding the facts, ladies and gentlemen, make sure that you consider them fairly, carefully, find them impartially, impartially without any consideration as to the effect that it may have on anyone who has testified, including the defendant, who didn't testify. You're not to draw any unfavorable inference. But what I'm driving at is, it's your finding of the facts that will control, and you're not to be concerned about punishment in the event of a finding of guilty, you're not to be concerned about what effect, if any, any of the witnesses may have in the final outcome of this case. You find the facts as you find them, fairly and impartially." (Internal quotation marks omitted.) Id.

The Appellate Court in *Hicks* held that the trial court's final instruction failed to comply with § 54-84 (b) and, in particular, was inadequate because, "[a]lthough it immediately follows mention of the fact that the defendant did not testify, the court's instruction that the jury 'not draw any unfavorable inference' appears to be an instruction of general applicability, one that is perhaps related to the several instructions that immediately preceded it"; id., 272; and the statute requires a specific instruction that the jury cannot draw an unfavorable inference from the defendant's failure to testify. Id., 273. The Appellate

Court relied on two of its prior decisions, *State* v. *Stewart*, 60 Conn. App. 301, 308–10, 759 A.2d 142 (2000), and *State* v. *Vega*, 36 Conn. App. 41, 46, 48, 646 A.2d 957 (1994), in holding that the requirement of §54-84 (b) could not be satisfied either by instructions to venire panels or by preliminary instructions provided after the jury was seated and sworn but prior to the start of evidence. See *State* v. *Hicks*, supra, 97 Conn. App. 275–76.

Regarding instructions to venire panels, the Appellate Court recited the reasoning of *State* v. *Stewart*, supra, 60 Conn. App. 308–309, that the language of §54-84 applies to a person *on trial* for a crime, which does not begin until the jury panel is selected and sworn, and that the statute directs the court to instruct the jury, not a pool of venirepersons from which the jury is to be drawn. See *State* v. *Hicks*, supra, 97 Conn. App. 276.[4] The court in *Hicks* also rejected the state's argument that §54-84 (b) was satisfied because the trial court gave a specific no adverse inference instruction in its preliminary instructions, after the jury was seated and sworn, and prior to the start of evidence. See id. The Appellate Court did not engage in the same statutory interpretation exercise that the majority does today to ascertain the meaning of §54-84 (b) or the legislature's intent but, rather, reasoned that the preliminary instructions did not suffice to satisfy the statute because they were provided several days prior to the trial court's delivery of its final charge, at a time when the court could not state with certainty that the defendant would exercise his right not to testify during the evidentiary phase of the trial. See id., 277.

The Appellate Court's rationale in *Hicks* was not limited to determining that the trial court had not complied with the express mandate of the statute, however. Rather, because the defendant in *Hicks* had not preserved his instructional claim of error, the Appellate Court

[4]To the extent that the state argues that instructions provided to venire panels would suffice, I agree with the Appellate Court that the text of §54-84 requires that the trial court provide the instruction to an empaneled jury.

reviewed it under *State* v. *Golding*, supra, 213 Conn. 239–40, and held that the defendant prevailed because he had "demonstrated that a constitutional violation clearly exist[ed] that clearly deprived him of a fair trial, and the state ha[d] failed to demonstrate [the] harmlessness of the constitutional violation beyond a reasonable doubt." *State* v. *Hicks*, supra, 97 Conn. App. 269. As I already explained, the defendant has no constitutional right to the instruction unless he requests it. Therefore, I believe *Hicks* incorrectly concluded that the defendant's constitutional rights were violated when the court provided the instruction, without request, prior to the close of evidence. Additionally, unlike the legal landscape at the time the Appellate Court decided *Hicks*, under the applicable law at the time of the defendant's trial in the present case and thereafter, unpreserved instructional claims—including constitutional claims—are considered waived. See *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). Thus, if we are truly considering whether *Hicks* was correctly decided, the defendant in *Hicks* would not have prevailed on his *Golding* claim under current law, in my view rendering *Hicks* of limited value in determining whether it was patent error under § 54-84 (b) to provide the instruction to the jury prior to the final jury charge.

Nonetheless, the majority concludes that the trial court's failure to repeat the no adverse inference instruction in its final charge was plain error because *Hicks*— an Appellate Court decision—bound the trial court at the time of trial, and, when a reviewing court applies the plain error doctrine, "[c]ontrolling law is the law in existence at the time of trial." Part II of the majority opinion. I do not agree that this adage requires *this court* to reverse a murder conviction under the plain error doctrine in the present case, however. As the majority states, for purposes of the plain error doctrine, "whether an error is clear is premised on the law existing at the time of trial." (Internal quotation marks omitted.) Id., quoting *State* v. *Turner*, 334 Conn. 660, 683, 224 A.3d 129 (2020). But we have applied this rule only in contexts

in which the trial court's ruling was *correct* at the time and would only be (plainly) erroneous based on a change in the law that occurred after the trial, which we have determined is not an appropriate application of the plain error rule. See *State* v. *Turner*, supra, 684–85.

In *State* v. *Turner*, supra, 334 Conn. 670–72, at the time of the defendant's trial, this court had not yet decided whether cell phone data constituted the type of scientific evidence that required a hearing pursuant to *State* v. *Porter*, 241 Conn. 57, 689 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), before a trial court could admit expert testimony about the data. The defendant in *Turner* did not challenge the admissibility of the cell phone data at trial. After the defendant's trial, but while his appeal was pending before the Appellate Court, this court decided *State* v. *Edwards*, 325 Conn. 97, 156 A.3d 506 (2017), concluding that expert testimony regarding cell phone data is the type of scientific evidence that *Porter* contemplated. See id., 133. Thus, we held in *Edwards* that a *Porter* hearing is required, if requested, before a trial court may admit into evidence expert testimony about cell phone data. See id. The defendant in *Edwards* had raised the *Porter* issue at trial. Id., 118. The defendant in *Turner* had not. See *State* v. *Turner*, supra, 673.

In *Turner*, we chose the rule the majority quotes ("whether an error is clear is premised on the law existing at the time of trial"; id., 683) in declining to adopt the federal plain error standard, which determines whether an error was clear based not on the law existing at the time of trial but "on the basis of the law existing at the time of appeal . . . ." Id., 682. We explained that, unlike the federal plain error rule, under which the clarity or obvious nature of the error is one of several factors that federal courts of appeals consider in the exercise of appellate discretion when determining whether to correct an error not raised at trial, "Connecticut's plain error doctrine is a rule of reversibility, *mandating reversal* when plain error is found." (Emphasis in original; internal quotation marks omitted.) Id., 685. In *Turner*,

we held that, because we had not yet issued our decision in *Edwards* at the time of the defendant's trial in *Turner*, and therefore existing case law would not have guaranteed the defendant at his trial a right to a *Porter* hearing regarding cell phone data, we would not employ this state's plain error doctrine to afford the defendant relief on his unpreserved claim. See id.[5]

It does not follow that applying the "time of trial" rule in the present context requires the reversal of a conviction on plain error grounds. I believe it is a misuse of the extraordinary remedy of the plain error doctrine for this court to decide that, because, at the time of trial, a lower court precedent (*Hicks*) "controlled" the trial court, the trial court committed a patent error—rather than determining whether an error is patent based on *our* own interpretation of the law. Applying the plain error doctrine in this way is inconsistent with our "hierarchical judicial system," in which "this court has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by our precedent," not the other way around. *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010); see also, e.g., *State* v. *Samuels*, 273 Conn. 541, 553 n.8, 871 A.2d 1005 (2005) ("[this court is] not bound by a decision of the Appellate Court"). I cannot justify casting a vote that would result in the reversal of a conviction on plain error grounds when I (1) disagree with the rationale of lower court precedent (*Hicks*) on which the majority bases its determination of plain error, and (2) find *Hicks*' rationale to be of limited relevance and not binding on this court.

[5]The majority also cites *State* v. *Darryl W.*, 303 Conn. 353, 33 A.3d 239 (2012), in which the defendant claimed that the trial court's jury instruction about an element of the crime at issue was improper, despite the court's verbatim reading to the jury of the statutory language. Id., 373–74. The defendant argued that we should put a judicial gloss on the statute and hold that it was plain error for the trial court not to include his proposed language in its jury instruction. Id. As in *Turner*, we held that even a new interpretation of the law could not retroactively make the trial court's instruction plain error because that was not the law at the time of trial. See id., 374; see also *State* v. *Raeon A.*, 354 Conn. 815, 823, A.3d (2026).

## III

Even if I were to assume that the trial court erred by not repeating the no adverse inference instruction in its final charge to the jury, I cannot conclude, as the majority does, that this error should compel a reversal of the defendant's conviction. The majority concludes first that a failure to provide the no adverse inference charge to the jury during the court's final instructions is not an error that renders a trial so fundamentally unfair or unreliable that it requires *automatic* reversal. See part II B 1 of the majority opinion (overruling *State* v. *Suplicki*, 33 Conn. App. 126, 634 A.2d 1179 (1993), cert. denied, 229 Conn. 920, 642 A.2d 1216 (1994)). I agree with this. However, the majority still departs from the conventional second prong of the plain error standard, which requires the defendant to demonstrate that the error is "so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 597, 134 A.3d 560 (2016). Instead, the majority applies the constitutional harmless error standard, which requires the state to establish, beyond a reasonable doubt, that there is no reasonable possibility that the jury was misled because of the trial court's failure to provide the no adverse inference instruction a second time. Because the instruction was in fact provided to the jury—albeit earlier in the trial—I would not require the state to bear this heavy burden but instead would require the defendant to meet the manifest injustice standard that usually applies to plain error review. I recognize that we have invoked the constitutional harmless error standard in other cases in which we have found the trial court to have committed patent error regarding § 54-84 (b). However, a rote application of that standard to the present case just because the claim of error involves the same statute fails to examine critically the genuine distinctions between the trial court's errors in those cases and the error in this case. I consider today's holding to constitute an unwarranted and unnecessary extension of the plain error doctrine, and I do not find persuasive the

majority's reasoning that the trial court's preliminary instructions failed to sufficiently mitigate any potential harm created by omitting the instruction in the final jury charge.

This court has stated that, "ordinarily, under the second prong of the plain error test, it is the appellant's burden to demonstrate that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Ruocco*, supra, 322 Conn. 804 n.3. "We previously have determined, however, that, because the statutorily mandated no adverse inference instruction was intended to effectuate a fundamental constitutional right, unless the defendant or defense counsel requests that the charge not be given, when the trial court fails to give that instruction, the burden is on the state to demonstrate that the omission was harmless beyond a reasonable doubt." Id., 804–805 n.3. Although § 54-84 (b) is a prophylactic measure intended to protect a constitutional right, it is actually more demanding than the relevant provisions of either the federal or state constitution. See *Carter* v. *Kentucky*, supra, 450 U.S. 305; *State* v. *Sinclair*, supra, 197 Conn. 585. The accused has a constitutional right to the charge when requested; see *Carter* v. *Kentucky*, supra, 305; and an unconditional statutory right to the instruction, unless he requests otherwise. See General Statutes § 54-84 (b). However, as I ready explained, neither this court nor the legislature has ever determined that the defendant has a constitutional or statutory right to the instruction at a specific time.

The purpose of the statute is to limit juror speculation about the meaning of the defendant's silence, which "exacts an impermissible toll on the full and free exercise of the privilege" against self-incrimination. *Carter* v. *Kentucky*, supra, 450 U.S. 305. It may be appropriate to place this heavier burden on the state when the trial court fails to completely "instruct the jury that [it] may draw no unfavorable inferences from the accused's failure to testify"; General Statutes § 54-84 (b); see *State* v.

*Sinclair*, supra, 197 Conn. 584; or when the court has deviated so significantly from the statute's language that the court's instruction fails to convey the substantive meaning of the statute. See, e.g., *State* v. *Tatem*, 194 Conn. 594, 600–601, 483 A.2d 1087 (1984) (it was harmful error when trial court replaced " 'unfavorable' " with " 'unreasonable' " in statutory language). However, the jury in the present case *was* provided with an instruction from the court that matched the statutory requirements. The majority contends that the trial court's failure to repeat the no adverse inference instruction in its final jury charge makes this a total "noncompliance" or "total omission" case on par with other § 54-84 (b) cases in which the trial court completely neglected to instruct the jury as to the implications of the defendant's decision not to testify. See, e.g., *State* v. *Ruocco*, supra, 322 Conn. 802; *State* v. *Carter*, 182 Conn. 580, 581, 438 A.2d 778 (1980); *State* v. *Burke*, supra, 182 Conn. 333. But that is only because the majority has engineered its own definition of the phrase, "[a] total omission occurs if the final jury instructions contain nothing resembling the no adverse inference instruction . . . ." Footnote 19 of the majority opinion. I can just as easily define total "noncompliance" or "total omission" to exclude cases in which the trial court has provided the instruction, albeit at an earlier time in the trial.

Although we have not recognized in our case law an exception to the manifest injustice standard *other than* when the court finds a violation of § 54-84 (b), I am not of the view that *any* violation of the statute that this court deems to be error should justify the dramatic burden shift identified in *Ruocco*. See *State* v. *Ruocco*, supra, 322 Conn. 804 n.3; cf. *State* v. *Michael T.*, 338 Conn. 705, 737, 259 A.3d 617 (2021) ("we can perceive no reason why the legislature would have wanted to bar trial courts from deviating from the specific language of the statute when instructing the jury, as long as the courts give an instruction that is at least as protective of the defendant's constitutional right as the statutory language"). In particular, I do not believe that placing

the constitutional harmless error burden on the state is either appropriate under our plain error jurisprudence, or required by the statute's *purpose*, when the trial court has provided the instruction in full, without request, but has only not repeated the instruction in its final charge, also without request or objection.

Instead, in assessing whether the timing of the statutorily required instruction was harmful error, I would apply the usual manifest injustice prong of the plain error doctrine, requiring the defendant to demonstrate that the trial court's failure to repeat the instruction during its final charge "affect[ed] the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Jamison*, supra, 320 Conn. 596. A reviewing court should consider whether, in the context of the instructions provided to the jury as a whole, the trial court adequately conveyed the substance of the § 54-84 (b) instruction. See, e.*g.*, *State* v. *Michael T.*, supra, 338 Conn. 738 (minor deviation from specific wording of § 54-84 (b) is not erroneous so long as instruction conveys statute's substantive meaning). I do not believe that cases such as this one, in which the court provided the mandated instruction in full, and in which only the timing of the instruction is at issue, fall within that unique class of instructional error cases that requires reversal of the judgment without the demonstration of manifest injustice that the plain error doctrine typically requires. In view of the instructions given as a whole, including those provided before the start of evidence, I cannot conclude that a failure to reverse the judgment in this case will result in manifest injustice.

The majority cites three justifications for finding that the trial court's preliminary instructions did not render the omission from the final instructions harmless: (1) the distinct purposes of preliminary and final instructions; (2) the risk that the jurors would not remember and follow the preliminary instructions; and (3) the risk of overall confusion created by the discrepancy between the preliminary and final instructions.

I agree with the majority that preliminary instructions and those given after evidence and arguments serve different purposes and that the former cannot supersede the latter. However, nothing in the trial court's final instructions to the jury here contradicted the no adverse inference instruction the court provided in its preliminary instructions; nor did the final instructions contain language that misstated the mandatory instruction or could have possibly confused the jury. Additionally, although the preliminary and final instructions given here were separated by eight days, we routinely rely on the assumption that jurors listen to and follow the trial court's instructions. See, e.g., *State* v. *Ancona*, 256 Conn. 214, 219, 772 A.2d 571 (2001) ("[u]nless there is evidence to the contrary, the jury is presumed to follow the court's instructions" (internal quotation marks omitted)). I do not believe we should depart from this assumption because there were days separating the court's instruction—preliminary, curative, or otherwise substantive—and the start of deliberations.

The majority posits that the statute's purpose, which is to minimize juror speculation during deliberations, is not served when the instruction is provided many days before the deliberations begin, and, therefore, the jurors during those deliberations "might speculate about the defendant's decision not to testify." Part II B 2 of the majority opinion. This is at least debatable. That jurors will speculate about a defendant's decision not to testify only when they are about to begin deliberations is itself speculative, in my mind, or at least not provable. Whether they will hear from the defendant is just as likely to be going through the jurors' minds throughout the trial, including during the state's case. Giving this instruction at the beginning, and putting to bed any speculation about the defendant's decision to testify before he has made that decision, may also effectively serve to minimize juror speculation throughout the presentation of evidence and during deliberations. Perhaps it is best that the court provide the instruction at both times, unless the defendant objects. But, as I see

it, the majority is grafting onto the statutory mandate its own determination of when an instruction would be most beneficial or effective for the jury, which is not required by the statute. Neither is it appropriate to enforce this policy preference through the plain error doctrine by reversing the defendant's conviction. See part IV of this opinion.

The majority also points to the potential confusion created by the omission of an instruction from the final charge that had been given in the preliminary instructions, citing to *State* v. *Vega*, supra, 36 Conn. App. 48, in which the Appellate Court was concerned that the jury might have been misled by the trial court's final instructions, which failed to properly convey the requisite information to the jury. However, in *Vega*, the final instruction included a suggestion that the jury could "draw a fair or just, although unfavorable or adverse, inference from the defendant's failure to testify." Id. I do not believe it is at all likely, probable, or even realistic that the jury in the present case was similarly confused, or that the jury might have somehow believed that, because the instruction was not repeated in the final charge, the jury was released from the admonition not to draw unfavorable inferences from the defendant's decision not to testify.

Further, the majority concludes that the strength and nature of the state's evidence of guilt in this case were not " 'so ironclad' " that the trial court could consider the alleged instructional error harmless because there was a reasonable possibility that the jury might have considered the defendant's choice not to testify in reaching its verdict. The majority points to the lack of physical evidence linking the defendant to the murder and the fact that the state's theory of guilt relied heavily on the defendant's prior statements, which were inconsistent with other evidence, and his prior confession, which the defendant, by not testifying, did not rebut. In the majority's view, therefore, the state's case invited the jury to question how the defendant would respond to

the state's arguments and therefore speculate about the defendant's choice not to testify.

I find the state's case here significantly stronger than the majority represents when forced to measure the "strength and nature of the state's evidence of guilt" against the court's failure to repeat the no adverse inference instruction during its final instructions to the jury. Part II B 2 of the majority opinion. The state presented the testimony of Jose Cruz Correra (Cruz), to whom the defendant had confessed that he had been with the victim when a "problem" arose, had taken the victim to a factory, made him kneel, and shot him in the head. This confession came before the police publicized the cause of the victim's death. The state played for the jury a recorded interview between Detective Jorge Cintron and the defendant's mother, during which the defendant's mother told the detective that the defendant had told her, when she asked what the victim had taken, that it was "none of [her] business" and that the victim "took something that didn't belong to him, and he owed it to the streets. It happened because it had to happen. . . . [H]e did things in the street, and they made him pay." The jury was entitled to find this statement consistent with Cruz' testimony that the defendant had described a "problem" that arose. The state also presented evidence that the defendant had made inconsistent statements to his mother and to the police, and that contradicted surveillance video footage, and falsely claimed to have seen the victim alive after the shooting.

In sum, even employing the majority's standard for constitutional harm, which I maintain is not the correct standard, in light of the strength of the state's factual case, I cannot conclude that the trial court's failure to repeat the no adverse inference instruction was so harmful that it warrants reversal of the defendant's conviction because a failure to do so would "threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009). I do not find the majority's

conclusion—that reversal of the defendant's otherwise valid conviction is warranted here because the state could not prove that the trial court's failure to repeat the no adverse inference instruction in its final charge was harmless beyond a reasonable doubt—compatible with either the mandate of the statute, its purpose, or our plain error jurisprudence.

IV

The reason I disagree with the majority and have chosen to write separately is that I believe that the explanation provided for invoking the plain error doctrine in the present case perpetuates confusion in our case law regarding the already opaque doctrines that guide our treatment of unpreserved claims on appeal. I believe that this court (myself included) too often succumbs to employing labels at the expense of analysis, which, in a case such as this one, has ultimately broadened access to an avenue for review and relief that are supposed to be reserved for truly exceptional claims. Even if the § 54-84 (b) instruction belongs in the final jury charge, I do not believe this case presents a truly exceptional claim of error. I am confounded by the fact that this court (myself included) routinely affirms convictions, finding no harm or no manifest injustice in cases that, in my view, involve much more significant errors than the majority believes occurred here.

In *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 161–62, 84 A.3d 840 (2014), we surveyed and clarified the doctrines we employ to review unpreserved claims on appeal: **(1)** claims involving subject matter jurisdiction; **(2)** claims involving constitutional violations reviewable under *State* v. *Golding*, supra, 213 Conn. 239–40; **(3)** claims subject to reversal under the plain error doctrine; and **(4)** circumstances that otherwise justify review as the exercise of our supervisory authority over the administration of justice. In my view, this court's decision in *State* v. *Kitchens*, supra, 299 Conn. 482–83, has contributed significantly to the confusion and inconstancy of the

application of these doctrines. Putting aside the merits and demerits of that controversial four to three decision to preclude *Golding* review of instructional claims waived at trial, an unquestionable byproduct of this court's decision in *Kitchens* and subsequent decision in *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017) (*Kitchens* waiver does not preclude appellate relief under plain error doctrine), is that our review of unpreserved constitutional instructional claims of error that would otherwise be brought under *Golding* is now limited to the plain error or supervisory authority doctrines. A sampling of appeals that have come before this court in just the past two years demonstrates how prevalent requests for plain error review of constitutional instructional claims have become. See, e.g., *State* v. *Anthony V.*, 354 Conn. 255, 260, 350 A.3d 1128 (2026) (defendant sought review of unpreserved claim of constitutionally deficient jury instruction under plain error doctrine); *State* v. *Christon M.*, 354 Conn. 1, 6 n.4, 348 A.3d 450 (2026) (defendant sought review of waived claim of constitutionally inadequate instruction under plain error doctrine); *State* v. *Mebane*, 350 Conn. 483, 510–11, 325 A.3d 168 (2024) (defendant sought review of waived instructional claim under plain error doctrine); *State* v. *Daren Y.*, 350 Conn. 393, 420–21, 324 A.3d 734 (2024) (same). But cf. *State* v. *McClain*, supra, 821–22 (*Rogers, C. J.*, concurring) (plain error reversal is inadequate substitute for regular appellate review of claims of constitutional error in jury instructions and is not "hospitable framework" to advance claims that are novel or success of which is dependent on overruling existing precedent).

The defendant in the present case did not preserve his claim of instructional error at trial. After the close of briefing to this court, his appellate counsel moved for permission to file a supplemental brief addressing this unpreserved claim, which he had "failed to raise in his principal brief regarding the trial court's omission of a no adverse inference instruction during its final charge to the jury, as mandated under General Statutes § 54-84

(b)." The state did not oppose counsel's motion, and this court granted it.

In Connecticut, an unpreserved claim that the trial court failed to instruct the jury in its final charge that it may draw no adverse inference from the defendant's failure to testify presents a unique challenge to our conventional review of unpreserved instructional claims. The defendant makes no claim under the federal or state constitution because the instruction is constitutionally required only when the defendant has requested it; see *Carter* v. *Kentucky*, supra, 450 U.S. 305; *State* v. *Sinclair*, supra, 197 Conn. 585; and not at any particular time. Nonetheless, any constitutional claim is unpreserved because the defense did not request the instruction or object to its omission from the final charge.

Section 54-84 (b) creates a statutory right to the instruction that is not conditioned on the defendant's request for it. Although § 54-84 (b) is more protective than either the federal or state constitution, our precedents have elevated a defendant's right to the instruction under § 54-84 (b) to one "of constitutional dimension" because the statute serves to effectuate a fundamental constitutional right. See, e.g., *State* v. *Ruocco*, supra, 322 Conn. 804. This characterization afforded the defendant in *Hicks* review under *Golding*. See *State* v. *Hicks*, supra, 97 Conn. App. 269. As I have pointed out, today, constitutional claims of instructional error pursuant to § 54-84 (b) based on when the no adverse inference charge should be given, like the defendant's claim in *Hicks*, would be considered waived. See *State* v. *Kitchens*, supra, 299 Conn. 482–83.

As the majority notes, this court has justified review of § 54-84 (b) claims for plain error, which cannot be waived, because the statute serves to effectuate the fundamental constitutional right of a defendant not to testify at his criminal trial. See, e.g., *State* v. *Burke*, supra, 182 Conn. 331–32 ("[w]here the legislature has chosen specific means to effectuate a fundamental right, failure to follow the mandatory provisions of the statute

is plain error, reviewable by this court"). Effectively then, by calling this plain error but then requiring the state to demonstrate harmlessness beyond a reasonable doubt, this court has simply converted what would be traditional *Golding* review into the plain error doctrine. The result is a muddling of these doctrines for reviewing unpreserved claims and, in particular, a dilution of the plain error doctrine that I believe warrants more critical review by this court. It will be challenging to confine shifting this burden in our plain error jurisprudence only to § 54-84 (b) claims (but apparently to all § 54-84 (b) claims) rather than applying it to any claim of error involving an instruction that prophylactically protects a defendant's constitutional rights.

As the majority properly recites, under the plain error doctrine, the defendant must first "establish that there was an obvious and readily discernable error . . . ." (Internal quotation marks omitted.) *State* v. *Diaz*, 348 Conn. 750, 762, 311 A.3d 714 (2024); see part II of the majority opinion. The error must be "obvious in the sense of not debatable." (Internal quotation marks omitted.) *State* v. *Jamison*, supra, 320 Conn. 596. "Second, the defendant must establish that the . . . error was so harmful or prejudicial that it resulted in manifest injustice." (Internal quotation marks omitted.) *State* v. *Diaz*, supra, 763. Thus, an obvious error is a prerequisite for relief under the plain error doctrine but is insufficient for its application because "[p]lain error review is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Myers*, supra, 290 Conn. 287–88.

This account of the plain error doctrine, codified at Practice Book § 60-5, hardly scratches the surface, however. This court's past descriptions of the plain error doctrine and the appropriate circumstances for its application are so replete with synonyms for "extraordinary" that they warrant a prominent display in any opinion.

For example, we have described a reversal of a judgment on plain error grounds as an "*extraordinary* remedy used by appellate courts to rectify errors committed at trial that . . . are of such *monumental* proportion that they threaten to *erode our system of justice* and work a serious and *manifest injustice* on the aggrieved party." (Emphasis added.) Id., 289. This court has also observed that the plain error doctrine should be "invoked sparingly" and only when the error "directly affect[s] the outcome of the case." *Berchtold* v. *Maggi*, 191 Conn. 266, 274, 464 A.2d 1 (1983). "Under this rubric, [a]n important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice." (Internal quotation marks omitted.) *State* v. *Pierce*, supra, 269 Conn. 450.

It has been said that "[t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility." (Internal quotation marks omitted.) *State* v. *Myers*, supra, 290 Conn. 289. This aphorism is often stated but not frequently well understood, leading commentators to state that courts "sometimes blur this distinction with the use of sloppy language." E. Prescott & J. Lavoie, Connecticut Appellate Practice & Procedure §8-2:4, p. 502 (8th Ed. 2023). What this adage means is that the plain error doctrine "is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Internal quotation marks omitted.) *State* v. *Myers*, supra, 289.

If our law is settled that unpreserved claims of instructional constitutional error are waived, rather than shoehorning the defendant's claim into the plain error doctrine, as he asks us to do and as the majority has done, I think this case is more appropriately viewed as an exercise of our supervisory authority. The majority determines that the legislature intended to require the no adverse inference instruction to be given during final jury instructions and insists that the timing of the instruction

"must be aligned with its fundamental purpose, which is to minimize juror speculation during jury deliberations," and that "it does not serve that purpose to provide the instruction many days before deliberations begin." Part II B 2 of the majority opinion. As a matter of judicial policy, I might agree. However, neither the statute's plain language nor its history mandates the precise timing of the instruction as a matter of *legislative* policy. Therefore, consistent with my view that *Hicks* was not correctly decided, I cannot conclude that it was patent error for the trial court to have provided the no adverse inference instruction only in its preliminary instructions to the jury. See *State* v. *Kyle A.*, 348 Conn. 437, 447–48, 307 A.3d 249 (2024) (jury instruction was not improper simply because it was not consistent with better practice of including elements of intended crime and noting that it is "especially rare for a jury instruction to be so clearly improper that our courts have deemed plain error review necessary to correct it"). In a case in which the jury received the statutorily—although not constitutionally—mandated no adverse inference instruction without request and without objection to its omission in the court's final instructions, and in light of the many cases in which we have upheld convictions notwithstanding what I would consider greater transgressions on the rights of defendants, I cannot conclude that any error here rendered the verdict in this case "unreliable" or that an affirmance of the judgment would constitute a "miscarriage of justice." (Internal quotation marks omitted.) *State* v. *Pierce*, supra, 269 Conn. 450.

Determining the proper timing of a jury instruction would, however, constitute an appropriate exercise of our supervisory authority. See, e.g., *State* v. *Carrion*, 313 Conn. 823, 849, 100 A.3d 361 (2014) (exercising supervisory authority to direct trial courts to refrain from using certain language in jury instruction); *State* v. *Medrano*, 308 Conn. 604, 631, 65 A.3d 503 (2013) (exercising supervisory authority to direct trial courts to refrain from instructing jurors, when defendant testifies, that they may consider defendant's interest in outcome

of case and importance to him of trial's outcome). When exercising our supervisory authority to provide instructional guidance to trial courts, our cases fall into two categories. "In the first category are cases wherein we have utilized our supervisory power to articulate a procedural rule as a matter of judicial policy, either as [a] holding or dictum, but without reversing [the underlying judgment] or portions thereof . . . . In the second category are cases wherein we have utilized our supervisory powers to articulate a rule or otherwise take measures necessary to remedy a perceived injustice with respect to a preserved or unpreserved claim on appeal." (Internal quotation marks omitted.) *State* v. *Weatherspoon*, 332 Conn. 531, 552–53, 212 A.3d 208 (2019). When cases fall into the first category, "we are free to invoke our supervisory authority prospectively when prudence and good sense so dictate." *State* v. *Carrion*, supra, 852. When a case falls into the second category, and we are asked to reverse a conviction under our supervisory authority, the defendant must meet a more demanding standard and establish that the invocation of the extraordinary remedy of reversal of his conviction is necessary to protect the integrity of a particular trial and the perceived fairness of the judicial system as a whole—a stark contrast from placing the burden on the state to prove harmlessness beyond a reasonable doubt. Id., 851.

Just as I conclude in part III of this opinion that the defendant cannot meet the manifest injustice standard, similarly, I would not conclude that the defendant can meet the "second category" standard in the present case to justify a reversal of his conviction using our supervisory authority. See *State* v. *Weatherspoon*, supra, 332 Conn. 552. The majority has essentially imposed a rule of judicial policy that neither the constitution nor the legislature explicitly demands, and reverses a conviction based on that judicial policy without requiring the defendant to establish that this extraordinary remedy is required to protect the integrity and fairness of his trial and the judicial system. However, it would be appropriate for this court to determine that prudence and good sense

require the §54-84 (b) instruction to be given in final jury instructions and to exercise its supervisory authority to provide prospective guidance to trial courts regarding the appropriate timing of the instruction.

Accordingly, I respectfully dissent.